# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT
## OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELIQUE BRICKELL | : | CIVIL ACTION-LAW |
| Plaintiff | : | |
| v. | : | |
| CLINTON COUNTY PRISON BOARD | : | |
| THOMAS H. BOSSERT, individually and as | : | |
| Chairman of the Clinton County Prison | : | |
| Board; THOMAS V. DURAN, individually | : | |
| and as Warden of the Clinton County | : | NO.: |
| Correctional Facility: JACQUELINE K. | : | |
| MOTTER, individually and as Deputy | : | JURY TRIAL DEMANDED |
| Warden of the Clinton County Correctional | : | |
| Facility: DAVID W. HARKEY, individually | : | |
| and as Deputy Warden of the Clinton County | : | |
| Correctional Facility; COUNTY OF | : | |
| CLINTON; HAROLD C. YOST, JR, | : | |
| individually and as Clinton County | : | |
| Commissioner, RICHARD K. KYLE | : | |
| individually and as Clinton County | : | |
| Commissioner, THOMAS H. BOSSERT | : | |
| as Clinton County Commissioner | : | |
| MICHELE SWEELEY, individually and | : | |
| as in her official Capacity as a Clinton | : | |
| County employee, JOHN DOE I, individually | : | |
| and in his official capacity as an officer of the | : | |
| Clinton County Sheriff's Department; | : | |

JOHN DOE II Individually and in his official:
capacity as an officer of the Clinton County  :
Sheriff's Department, CHARLES R             :
ANKNEY, Clinton County Sheriff; and         :
JOHN DOE III, individually and as in his/her:
official Capacity as a Clinton County       :
employee                                    :
      Defendants   :

## COMPLAINT

 **AND NOW,** comes the Plaintiff, above-named, by and through her attorney,

Douglas N. Engelman, Esquire, and files and serves upon the Defendants the

following Complaint, and in support thereof, avers the following:

1. Plaintiff Angelique Brickell is an adult individual residing at 325 Center

 Street, City of Williamsport, County of Lycoming, Commonwealth of

 Pennsylvania.

2. Defendant Clinton County Prison Board (Hereinafter "Prison Board") is an

 entity statutorily empowered by the County of Clinton to oversee the

 operation of the Correctional Facility and to establish policy at the

 Correctional Facility, located at 58 Pine Mountain Road, McElhattan,

 County of Clinton, Commonwealth of Pennsylvania. The Prison Board's

 primary place of business is at 232 East Main Street, City of Lock Haven,

 County of Clinton, Commonwealth of Pennsylvania

3.     Defendant Thomas H. Bossert at all times relevant hereto was a lawfully elected Clinton County Commissioner with a primary place of business at 232 East Main Street, City of Lock Haven, County of Clinton, Commonwealth of Pennsylvania.  Thomas Bossert is being sued both individually and in his official capacity as the Clinton County Commissioner and as the Chairman of the Clinton County Prison Board. Thomas Bossert was at all times material responsible for the drafting and implementing various County of Clinton and/or Correctional Facility policies and procedures, hiring, training and supervision of the Warden, Deputy Wardens, correctional officers and staff.  Defendant Bossert acted within the scope of his authority/employment and under the color of law pursuant to the customs, practices and polices of the County of Clinton and the Clinton County Prison Board.

4.     Defendant Thomas V. Duran at all times relevant hereto was the Warden of the Clinton County Correctional Facility and was a policy maker with a principal place of business at 58 Pine Mountain Road, McElhattan, County of Clinton, Commonwealth of Pennsylvania.  Thomas Duran is being sued both individually and in his official capacity as the Warden of the Clinton County Correctional Facility.  Defendant Duran was at all times material responsible for the drafting and implementing various Correctional Facility

policies and procedures, hiring, training and supervision all correctional

officers and staff.  Defendant Duran acted within the scope of his

authority/employment and under the color of law pursuant to the customs,

practices and polices of the Clinton County Prison Board and the County of

Clinton.

5.      Defendant Jacqueline K. Motter at all times relevant hereto was the Deputy

Warden and of Clinton County Correctional Facility with a principal place

of business at 58 Pine Mountain Road, McElhattan, County of Clinton,

Commonwealth of Pennsylvania. Defendant Motter is being sued both

individually and in her official capacity as the Deputy Warden of the Clinton

County Correctional Facility.  Defendant Motter was at all times material

responsible for the drafting and implementing various Correctional Facility

policies and procedures, hiring, training and supervision all correctional

officers and staff.  Defendant Motter acted within the scope of her

authority/employment and under the color of law pursuant to the customs,

practices and polices of the Clinton County Prison Board and the County of

Clinton.

6.      Defendant David W. Harkey at all times relevant hereto was the Deputy

Warden of Clinton County Correctional Facility with a principal place of

business at 58 Pine Mountain Road, McElhattan, County of Clinton,

Commonwealth of Pennsylvania.  Defendant Harkey is being sued both individually and in his official capacity as the Deputy Warden of the Clinton County Correctional Facility.  Defendant Harkey was at all times material responsible for the drafting and implementing various Correctional Facility policies and procedures, hiring, training and supervision all correctional officers and staff.  Defendant Harkey acted within the scope of his authority/employment and under the color of law pursuant to the customs, practices and polices of the Clinton County Prison Board and the County of Clinton.

7.    Defendant County of Clinton (Hereinafter "County") is a political subdivision existing under the laws of Pennsylvania, was a policy maker of the Clinton County Correctional Facility with a primary place of business at 232 East Main Street, City of Lock Haven, County of Clinton, Commonwealth of Pennsylvania.

8.    Defendant Harold C. Yost, Jr. is an adult residing at 2434 Jalice Circle, City of State College, County of Centre, Commonwealth of Pennsylvania at all times relevant hereto was a lawfully elected Clinton County Commissioner was a policy maker of the Clinton County Correctional Facility with a primary place of business at 232 East Main Street, City of Lock Haven, County of Clinton, Commonwealth of Pennsylvania.  Defendant Yost is

being sued both individually and in his official capacity as the Clinton County Commissioner. Defendant Yost was at all times material responsible for the drafting and implementing various County of Clinton and/or Correctional Facility policies and procedures, hiring, training and supervision of the Warden, Deputy Wardens, correctional officers and staff. Defendant Yost acted within the scope of his authority/employment and under the color of law pursuant to the customs, practices and polices of the County of Clinton and the Clinton County Prison Board.

9.    Defendant Richard K. Kyle is an adult individual 2 Kadi Drive, Mill Hall, County of Clinton, Commonwealth of Pennsylvania at all times relevant hereto was a lawfully elected Clinton County Commissioner was a policy maker of the Correctional Facility with a primary place of business at 232 East Main Street, City of Lock Haven, County of Clinton, Commonwealth of Pennsylvania.  Defendant Kyle is being sued both individually and in his official capacity as the Clinton County Commissioner. Defendant Kyle was at all times material responsible for the drafting and implementing various County of Clinton and/or Correctional Facility policies and procedures, hiring, training and supervision of the Warden, Deputy Wardens, correctional officers and staff.  Defendant Kyle acted within the scope of his authority/employment and under the color of law pursuant to the customs,

practices and polices of the County of Clinton and the Clinton County Prison Board.

10.     Defendant Michele Sweeley is an adult individual residing at 5979 Jacksonville Road, Howard, County of Centre, Commonwealth of Pennsylvania and at all times relevant hereto was an employee of the County of Clinton and worked at the Clinton County Correctional Facility with a principal place of business at 58 Pine Mountain Road, McElhattan, County of Clinton, Commonwealth of Pennsylvania.  At all times relevant hereto, Defendant Sweeley was acting in a supervisory role over Plaintiff Brickell and/or was in charge of the Correctional Facility kitchen and was responsible for the supervision of inmates working in the kitchen. Defendant Sweeley is being sued both individually and her official capacity as and officer, agent and/or employee of the County of Clinton.  Defendant Sweeley acted within the scope of her authority/employment and under the color of law pursuant to the customs, practices and polices of the County of Clinton and the Clinton County Prison Board.

11.     Defendant John Doe III is an adult individual and at all times relevant hereto was an employee of the County of Clinton and worked at the Clinton County Correctional Facility with a principal place of business at 58 Pine Mountain Road, McElhattan, County of Clinton, Commonwealth of Pennsylvania.  At

all times relevant hereto, Defendant John Doe III was the supervisor of the

Correctional Facility kitchen and was responsible for the supervision of

Clinton County kitchen personnel and/or inmates working in the kitchen.

Defendant John Doe III is being sued both individually and his/her official

capacity as and officer, agent and/or employee of the County of Clinton.

Defendant John Doe II acted within the scope of his/her

authority/employment and under the color of law pursuant to the customs,

practices and polices of the County of Clinton and the Clinton County Prison

Board.

12.     Defendant John Doe I at all times relevant hereto was an employee of the

County of Clinton and was hired by the Clinton County Sheriff as a Deputy

Sheriff with a primary place of business at 230 East Water Street, City of

Lock Haven, County of Clinton, Commonwealth of Pennsylvania.

Defendant John Doe I is being sued both individually and in his official

capacity as an officer of the Clinton County Sheriff's Department. At all

times relevant hereto, Defendant John Doe I was responsible for the care,

custody, control and transportation of Correctional Facility inmates,

including Plaintiff.  Defendant John Doe I acted within the scope of his

authority/employment and under the color of law pursuant to the customs,

practices and polices of the County of Clinton.

13.   Defendant John Doe II at all times relevant hereto was an employee of the County of Clinton and was hired by the Clinton County Sheriff as a Deputy Sheriff with a primary place of business at 230 East Water Street, City of Lock Haven, County of Clinton, Commonwealth of Pennsylvania. Defendant John Doe II is being sued both individually and in his official capacity as an officer of the Clinton County Sheriff's Department. At all times relevant hereto, Defendant John Doe II was responsible for the care, custody, control and transportation of Correctional Facility inmates, including Plaintiff.  Defendant John Doe II acted within the scope of his authority/employment and under the color of law pursuant to the customs, practices and polices of the County of Clinton.

14.   Defendant Charles R. Ankney at all times relevant hereto was a lawfully elected Clinton County Sheriff was a policy maker of the Clinton County Sheriff's Department with a primary place of business at 230 East Water Street, City of Lock Haven, County of Clinton, Commonwealth of Pennsylvania.  Defendant Ankney is being sued both individually and in his official capacity as the Clinton County Sheriff.  Defendant Ankney was at all times material responsible for the drafting and implementing various County of Clinton and the Clinton County Sheriff's Department policies and procedures, hiring, training and supervision of the Clinton County Deputy

Sheriffs and Clinton County Sheriff Department's Staff.  At all times

relevant hereto, Defendant Ankney was responsible for the care, custody,

control and transportation of Correctional Facility inmates, including

Plaintiff.  Defendant Ankney acted within the scope of his

authority/employment and under the color of law pursuant to the customs,

practices and polices of the County of Clinton and the Clinton County

Sheriff's Department.

## JURISDICTION & VENUE

15.     All Defendants reside in Pennsylvania.  The claim is not founded solely on

the basis of diversity of citizenship as at least one of the Defendants resides

in the Middle District of Pennsylvania.

16.     Jurisdiction is proper under 28 U.S.C.A. §1331 & 1343 providing district

courts with original jurisdiction over civil claims arising under the U.S

Constitution, laws or treaties of the United States.

17.     Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C.

§1391(b)(1).

## FACTS

18.     Or about February 10, 2007, Plaintiff was incarcerated in the Clinton County

Correctional Facility located in McElhattan, PA.

19.     Defendants are responsible for the care, treatment and safety of the inmates.

20.  Defendants are responsible for providing a safe working environment and a
     safe prison environment.

21.  At all times relevant hereto the Defendants were acting under the color of
     law.

22.  Due to the Plaintiff's remand into Defendants' custody, there existed a
     special relationship between Plaintiff and Defendants.

23.  As a result of the special relationship Defendants had an affirmative duty to
     protect Plaintiff from state created dangers.

24.  Defendants breached said duties.

25.  At all times relevant hereto it was the custom, practice and/or standard
     operating procedure of Defendant Prison Board, Defendant Thomas Bossert,
     Chairman of the Prison Board and/or all other defendants to establish and
     carry out the inmate work policy and procedures at the Correctional Facility.

26.  At all times relevant hereto it was the custom, practice and/or standard
     operating procedure of Defendant Prison Board, and/or all other defendants
     to establish and carry out medical treatment policy and procedure for
     inmates being held at the Defendants' Correctional Facility.

27.  At all relevant times hereto it was the custom, practice and/or standard
     operating procedure of the Defendant Prison Board, Defendant Thomas
     Bossert, Chairman of the Prison Board and/or all other defendants to

establish and carry out the policy and/or procedure relative to locating

equipment in the kitchen and/or correct uses of the equipment.

28.    At all relevant times hereto it was the custom, practice and/or standard

operating procedure of the Defendant Prison Board, Defendant Thomas

Bossert, Chairman of the Prison Board and/or all other defendants to

establish and carry out the policy and/or procedure relative to care and safety

of the inmates held in Defendant's Correctional Facility.

29.    At all relevant times hereto it was the custom, practice and/or standing

operating procedure of the Defendant Prison Board, Defendant Thomas

Bossert, Chairman of the Prison Board and/or all other defendants to

establish and carry out the policy and/or procedure relative to medical

emergencies that occur at Defendant's Correctional Facility.

30.    At all relevant times hereto it was the custom, practice and/or standing

operating procedure of the Defendant Prison Board, Defendant Thomas

Bossert, Chairman of the Prison Board and/or all other defendants to

establish and carry out the medical treatment policy and/or procedure

relative to inmates care at Defendant's Correctional Facility.

31.    At all times relevant hereto it was the custom, practice and/or standard

operating procedure of the Clinton County Prison Board, Defendant Thomas

Bossert, Chairman of the Prison Board and/or Defendant Commissioners

and/or all other defendants to transport prisoners to and from the Clinton
County Correctional Facility in coordination with Defendant Clinton County
Sheriff and/or Defendant Clinton County's Sheriff's Department.

32.    At all times relevant hereto it was the custom, practice, standard operating
procedure and/or duty of the Clinton County, Defendant Sheriff and
Defendant Clinton County's Sheriff's Department and/or all other defendants
to transport inmates to and from Defendant Clinton County's Correctional
Facility.

33.    At all times relevant hereto it was the custom, practice, standard operating
procedure and/or duty of Defendant Clinton County, Defendant Sheriff,
Defendant Deputy Sheriff John Doe I and/or Defendant Deputy Sheriff John
Doe II and/or all other defendants to transport inmates to and from
Defendant Clinton County's Correctional Facility.

34.    At all times relevant hereto it was the custom, practice and/or standard
operating procedure of Defendant Prison Board, Defendant Thomas Bossert,
Chairman of the Prison Board, Defendant Clinton County as developed by
County Commissioners, Defendant Bossert, Yost and Kyle and/or all other
defendants to accept monetary compensation from other counties to house
its prisoners.

35.   At all times relevant hereto it was the custom, practice and/or standard operating procedure of Defendant Clinton County as developed by County Commissioners, Defendant Bossert, Yost and Kyle and/or all other defendants to establish and carry out the inmate work policy and procedures at the Correctional Facility.

36.   At all times relevant hereto it was the custom, practice and/or standard operating procedure of Defendant Clinton County as developed by County Commissioners, Defendant Bossert, Yost and Kyle and/or all other defendants to establish and carry out the medical treatment policy and procedures for inmates being held at the Correctional Facility.

37.   At all times relevant hereto it was the custom, practice and/or standard operating procedure of Defendant Clinton County as developed by County Commissioners, Defendant Bossert, Yost and Kyle and/or all other defendants to establish and carry out the policy and/or procedure relative to locating equipment in the kitchen and/or correct uses of the equipment.

38.   At all times relevant hereto it was the custom, practice and/or standard operating procedure of Defendant Clinton County as developed by County Commissioners, Defendant Bossert, Yost and Kyle and/or all other defendants to establish and carry out the policy and/or procedure relative to care and safety of the inmates held in Defendant's Correctional Facility.

39.    At all times relevant hereto it was the custom, practice and/or standard
       operating procedure of Defendant Clinton County as developed by County
       Commissioners, Defendant Bossert, Yost and Kyle and/or all other
       defendants to establish and carry out the policy and/or procedure to medical
       emergencies that occur at Defendant's Correctional Facility.

40.    At all times relevant hereto it was the custom, practice and/or standard
       operating procedure of Defendant Clinton County as developed by County
       Commissioners, Defendant Bossert, Yost and Kyle and/or all other
       defendants to establish and carry out the policy and/or procedure to establish
       medical treatment policy and/or procedure relative to inmates care at
       Defendant's Correctional Facility.

41.    At all times relevant hereto it was the custom, practice and/or standard
       operating procedure of Defendant Clinton County as developed by County
       Commissioners, Defendant Bossert, Yost and Kyle and/or all other
       defendants to establish, follow and/or carry out procedure relative to
       transporting prisoners to and from the Clinton County Correctional Facility
       in coordination with Defendant Clinton County Sheriff and/or Defendant
       Clinton County's Sheriff's Department.

42.    At all times relevant hereto it was the practice and/or standard operating
       procedure of Defendant Warden Duran and/or Deputies Motter and Harkey

and/or all other defendants to establish, follow and/or carry out the inmate

work policy and procedures at Defendant's Correctional Facility.

43.     At all times relevant hereto it was the practice and/or standard operating

procedure of Defendant Warden Duran and/or Deputies Motter and Harkey

and/or all other defendants to establish, follow and/or carry out medical

treatment policy and procedure for inmates being held at the Defendant's

Correctional Facility.

44.     At all times relevant hereto it was the practice and/or standard operating

procedure of Defendant Warden Duran and/or Deputies Motter and Harkey

and/or all other defendants to establish, follow and/or carry out procedure

relative to locating equipment in the kitchen and/or correct uses of the

equipment.

45.     At all times relevant hereto it was the practice and/or standard operating

procedure of Defendant Warden Duran and/or Deputies Motter and Harkey

and/or all other defendants to establish, follow and/or carry out procedure

relative to care and safety of the inmates held in Defendant's Correctional

Facility.

46.     At all times relevant hereto it was the practice and/or standard operating

procedure of Defendant Warden Duran and/or Deputies Motter and Harkey

and/or all other defendants to establish, follow and/or carry out procedure

relative to medical emergencies that occur at Defendant's Correctional Facility.

47.  At all times relevant hereto it was the practice and/or standard operating procedure of Defendant Warden Duran and/or Deputies Motter and Harkey and/or all other defendants and/or all other defendants to establish, follow and/or carry out medical treatment policy and/or procedure relative to inmates care at Defendant's Correctional Facility.

48.  At all times relevant hereto it was the practice and/or standard operating procedure of Defendant Warden Duran and/or Deputies Motter and Harkey and/or all other defendants to establish, follow and/or carry out procedure relative to transporting prisoners to and from the Clinton County Correctional Facility in coordination with Defendant Clinton County Sheriff and/or Defendant Clinton County's Sheriff's Department.

49.  At all times relevant hereto it was the practice and/or standard operating procedure of Defendant Sweeley, Defendant John Doe III and/or all other defendants to establish, follow and/or carry out the inmate work policy and procedures at Defendant's Correctional Facility.

50.  At all times relevant hereto it was the practice and/or standard operating procedure of Defendant Sweeley, Defendant John Doe III and/or all other

defendants to establish, follow and/or carry out medical treatment policy and procedure for inmates being held at the Defendant's Correctional Facility.

51.    At all times relevant hereto it was the practice and/or standard operating procedure of Defendant Sweeley, Defendant John Doe III and/or all other defendants to establish, follow and/or carry out procedure relative to locating equipment in the kitchen and/or correct uses of the equipment.

52.    At all times relevant hereto it was the practice and/or standard operating procedure of Defendant Sweeley, Defendant John Doe III and/or all other defendants to establish, follow and/or carry out procedure relative to care and safety of the inmates held in Defendant's Correctional Facility.

53.    At all times relevant hereto it was the practice and/or standard operating procedure of Defendant Sweeley, Defendant John Doe III and/or all other defendants to establish, follow and/or carry out procedure relative to medical emergencies that occur at Defendant's Correctional Facility.

54.    At all times relevant hereto it was the custom, practice, standard operating procedure and/or duty of the Clinton County Sheriff and Defendant Clinton County's Sheriff's Department, by and through Defendant Sheriff and/or Defendant Deputy Sheriff John Doe I and/or Defendant Deputy Sheriff John Doe II and/or all other defendants to establish, follow and/or carry out the

policy and/or procedure relative to transporting prisoners to and from the Clinton County Correctional Facility

55.   At all times relevant hereto it was the custom, practice, standard operating procedure of the Defendants to provide medical care to inmates at the Correctional Facility.

56.   On or about the said date, Plaintiff Angelique Brickell was assigned to work (she did not volunteer but was required to do the work through the work release program) in the kitchen of the Correctional Facility in accordance with Defendants' inmate work policy, procedure and/or standard operating procedure.

57.   Some or all Defendants had special training in institutional kitchen equipment and/or kitchen safety.

58.   Defendants did not provide any instruction and/or safety training to Plaintiff relevant to working in the Correctional Facility kitchen.

59.   Defendants did not provide Plaintiff with and/or require Plaintiff to use any personal protection equipment, gear and/or clothing.

60.   Defendants policy, customs and/or standard operating procedures were inadequate in that they did not provide the following:

   a)   Requirements that inmates be assigned to safe jobs and/or jobs that they were trained or experienced and/or not placed at risk of harm;

b)   Requirement that inmates receive safety training before working in the Correctional Facility kitchen;

c)   Requirements that inmates are protected from unsafe working conditions

d)   Requirements that inmates be provided personal protective equipment, gear and/or clothing and/or use personal protective equipment, gear and/or clothing at all times;

e)   Requirements that burn first aid showers and/or first aid burn stations be installed in the Correctional Facility kitchen where serious burns could occur;

f)   Instruction for emergency medical care for burn victims;

g)   Requirements that at all times the Correctional Facility be adequately stocked with medical supplies that would be needed to care for burn victims;

h)   Procedures in the event of a medical emergency occur at Correctional Facility;

i)   Establish procedures for rapidly transporting inmates to medical facilities from Correctional Facility;

j)   Establish procedures for transporting burn victims back to medically necessary doctor's appointments; and

      k)     Require and/or establish specialized medical training for Correctional Facility personnel to care for burn victims.

61.   Correctional facility personnel were not trained and/or instructed to provide instruction and/or safety training to inmates working in the Correctional Facility kitchen.

62.   Said date Defendant Sweeley and/or Defendant John Doe III assigned Plaintiff Brickell to move hot ham/ham grease/broth and green beans believed to be 180 degrees or hotter, which were cooking in a kettle, into holding containers.

63.   Per her job assignment, she was then required to place the containers in an upright warmer, which was located a bit over her head reach.

64.   At all times relevant hereto, Defendants did not provide safe working conditions for Plaintiff and placed her in harms way due to the dangerous working environment.

65.   All Defendants knew or should have known that the Commonwealth regulations require food to be at least 135 degrees when being served, and that serious burns can occur when the food reaches temperatures of 140 degrees or more.

66.   All Defendants placed Plaintiff at serious risk of harm by requiring her to place scalding hot food at or above her head reach, without given her proper

training in food preparation and advising her of the serious dangers of possibly spilling hot food onto her body.

67.   Using upright warmers for said purpose was an open and obvious condition in the Correctional Facility kitchen.

68.   By not requiring Plaintiff to wear personal protective equipment, gear and/or clothing when performing a hazardous task such as she was required to do, Plaintiff was placed in an open and obvious dangerous situation.

69.   As Plaintiff Brickell placed the heavy container on the last shelf of the warming cabinet above her head, the container slid backward spilling the scolding hot ham/ham grease/broth and green beans over Plaintiff's ear, neck, shoulder and chest.

70.   Plaintiff's skin immediately began to peel and blister.

71.   Plaintiff sustained serious bodily injuries and required immediate medical attention to the areas affected by the burn.

72.   Defendants did not follow the medically necessary and/or medically accepted first aid procedure for burn victims.

73.   Defendants' kitchen was not equipped with and/or did not utilize a first aid burn station.

74. Defendants' had a duty and obligation to seek immediate emergency care for Plaintiff and to arrange prompt transportation for her to and from the Correctional Facility and the emergency room.

75. Correctional facility personnel were not trained and/or adequately instructed on how to care for burn victims.

76. Defendant Sheriff, Defendant Deputy Sheriff John Doe I and/or Defendant Deputy Sheriff John Doe II and/or other defendants had a duty and obligation to promptly respond to the Correctional Facility for emergency transports to the hospital.

77. After a significant unjustified delay, Plaintiff was then transported to the Lock Haven Hospital emergency room by Defendant Deputy Sheriff John Doe I and/or Defendant Deputy Sheriff John Doe II and/or other defendants.

78. Plaintiff was advised by the medical doctor at the ER to keep the burned area covered with Silvadene cream and bandages.

79. The emergency room doctor further recommended to Defendant Deputy Sheriff John Doe I and/or Defendant Deputy Sheriff John Doe II and/or other defendants the Plaintiff be seen the next day for a follow-up visit due to the severity of her burns.

80. Defendant Sheriff and/or Deputy Sheriff John Doe I and/or Defendant Deputy Sheriff John Doe II and/or other defendants failed to transport

Plaintiff to a doctor recommended follow-up visit and/or failed to make arrangements and/or notify the Correctional Facility of the doctor's recommendations.

81. Defendant Sheriff and/or Deputy Sheriff John Doe I and/or Defendant Deputy Sheriff John Doe II and/or other defendants denied Plaintiff of doctor recommended medically necessary treatment.

82. Plaintiff Brickell was not taken back to the ER or to a medical doctor for follow-up visits as recommended by the emergency room doctor.

83. Defendants denied Plaintiff of doctor recommended and medically necessary medical treatment.

84. Defendants did not provide timely care and treatment to Plaintiff; and as a result, the scarring from the burns was far more severe.

85. Defendants did not stock the medical office at the Correctional Facility with the adequate first aid supplies needed to care for and/or dress Plaintiff's burns and/or wounds.

86. Plaintiff's burns and/or wounds required cleaning, debridement, and dressing.

87. Plaintiff's burns and/or wounds oozed, and seeped onto her bedding.

88. Defendants did not provide clean bedding to Plaintiff as often as needed to avoid infection.

89.  Defendants did not clean and treat Plaintiff's wounds properly.

90.  Correctional facility personnel were not trained to treat and/or care for severe burns such as Plaintiff had.

91.  Defendants left Plaintiff's wounds exposed and undressed.

92.  Defendants place Plaintiff at risk for infection due to the exposed and undressed areas

93.  Defendants put Plaintiff in general population placing her at greater risk for infection

94.  Defendants placed Plaintiff at serious risk of harm.

95.  Defendants left Plaintiff without a reasonable means of self-protection in relation to her severe burns as she had no alternative means of medical care, attention or treatment.

96.  As a result of Defendants' improper care and untimely treatment, Plaintiff's burns and/or wounds became infected.

97.  As a result of Defendants' improper care and untimely treatment, Plaintiff's burns and/or wounds did not heal properly causing her permanent disfigurement of a degree significant more sever than had medical treatment been provided.

98. As a result of Defendants' actions set forth above, Plaintiff sustained, and continues to suffer from, serious bodily injuries and emotional distress, the future ramifications are yet to be determined.

99. Defendants were aware of the risk of harm to Plaintiff as other inmates and/or County personnel had sustained burns under similar circumstances previously.

100. Due to the Plaintiff being in the custody of Defendants, there existed a special relationship with all Defendants; therefore, had an affirmative duty to protect Plaintiff from state created dangers.

101. Due to the Plaintiff being in the custody of Defendants, there existed a special relationship with all Defendants; therefore, had a duty to provide proper medical treatment.

102. Defendants created a dangerous condition by placing Plaintiff in harms way, as stated herein, without providing her with personal protective equipment, gear and/or clothing, giving her any proper training warning her of the dangers that existed in performing kitchen duties or through their custom, practice and or policy, otherwise failing to protect Plaintiff.

103. Defendants created a dangerous condition by not maintaining proper care, custody and control of the real property in that Defendants' kitchen was not

equipped with a first aid burn station thus placing Plaintiff in harms way and failing to protect her.

104.  Defendants created a dangerous condition by not establishing adequate customs, policies and/or standard operating procedures.

105.  As a result of Defendants failure to create adequate customs, policies and/or standard operating procedures Defendants failed to train its employees resulting in deliberate indifference to Plaintiff by placing her in harms way, failing to protect her and not proving medically necessary care.

106.  Defendants violated Plaintiff's civil rights by failing to create customs, policies and/or standard operating procedures thus causing a state created danger.

107.  The edicts and/or acts of the Defendants represent official policy.

108.  Defendants breach their duties causing Plaintiff to suffer severe injury and permanent disfigurement.

109.  If Defendants would have had adequate policy, customs and/or standard operating procedures, Plaintiff would not have been place at risk nor would she have sustained any injuries and/or permanent disfigurement.

110.  The actions of all Defendants show a reckless indifference to the Plaintiff's health and safety; and, therefore, such actions were in violation of her civil rights and such conduct warrants a claim for punitive damages.

## COUNT I
**42 U.S.C. §1983**
**STATE CREATED DANGER**
**CLINTON COUNTY PRISON BOARD,**
**THOMAS BOSSERT, CHAIRMAN OF THE CLINTON COUNTY PRISON**
**BOARD**

111.  Plaintiff includes averments 1 through 110 by reference as though set forth herein at length.

112.   Defendants were responsible for providing Plaintiff with a safe prison environment.

113.  Plaintiff's injuries were a foreseeable and direct consequence of Defendants' failure to have and adequate policies, customs and/or standard operating procedures that provided the following, but not limited to:

    a)    Ensuring inmates such as Plaintiff were assigned to safe jobs and/or were trained or experienced in said jobs and/or not placed at risk of harm;

    b)    Ensuring inmates such as Plaintiff receive safety training before working in the Correctional Facility kitchen;

    c)    Ensuring inmates such as Plaintiff are protected from unsafe working conditions;

    d)    Ensuring inmates such as Plaintiff be provided personal protective equipment, gear and/or clothing and/or use personal protective equipment, gear and/or clothing at all times;

e)    Ensuring the Correctional Facility kitchen had burn first aid showers and/or first aid burn stations where serious burns could occur;

f)    Ensuring that Correctional Facility officers and/or staff were trained and/or instructed on emergency medical care for inmate burn victims such as Plaintiff;

g)    Ensuring that at all times the Correctional Facility was adequately stocked with medical supplies that would be needed to care for inmate burn victims such as Plaintiff;

h)    Ensuring that medical emergency policies were in effect in the event a severe inmate burn emergency occurred at Correctional Facility;

i)    Ensuring procedures were in effect for rapidly transporting inmate burn victim such as Plaintiff to medical facilities from Correctional Facility were in place;

j)    Ensuring procedures were in effect for transporting inmate burn victim such as Plaintiff back to medically necessary doctor's appointments;

k)    Ensuring Correctional Facility officers and/or personnel received specialized medical training to care for inmate burn victims such as Plaintiff; and

     l)    Ensuring that at all times the Correctional Facility had a nurse and/or specially trained medical personnel available to care for inmate burn victims such as Plaintiff.

114.   Defendants' failure to have and follow adequate policies violated Plaintiff's civil rights, by increasing Plaintiff's risk of harm and directly caused the foreseeable injuries to Plaintiff.

115.   Defendants' actions increased the risk of danger to Plaintiff in that the Defendants failed to take precautions necessary to prevent Plaintiff from sustaining severe burns and permanent disfigurement. Defendant's actions were deliberately indifferent to Plaintiff's constitutional rights and were malicious, conscience-shocking and done with willful disregard for the safety of the Plaintiff.

116.   Defendants acted in a conscience-shocking manner and with deliberate indifference, malice and with willful disregard for the safety of the Plaintiff when they failed to have adequate policies, practices, standard operating procedures and training.

117.   Defendants used their authority to increase the risk of creating an opportunity for the Plaintiff to be injured, which would not have existed, but for the acts of the Defendants in requiring Plaintiff to perform unsafe tasks

in the kitchen and remain in an unsafe environment exposing her burns to infection and permanent disfigurement.

118. Defendants acted within the course and scope of their employment, under the color of law, and pursuant to the customs, policies, standard operating procedures of the County of Clinton and/or the Clinton County Prison Board.

119. All of these actions violated the Plaintiffs rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I§§ 8 and 9 Constitution of the Commonwealth of Pa. and the laws of the United States and the Commonwealth of Pennsylvania and is in violation of Plaintiff's rights pursuant to 42 U.S.C. §1983.

120. The above described actions of the Defendants were so malicious, intentional and reckless and displayed such a reckless and deliberate indifference to the Plaintiff's rights and well being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C §§ 1983, Plaintiff demands compensatory and punitive damages against Defendants jointly and/or severally, in an amount in excess of One Hundred Thousand Dollars ($100,000), plus interest, costs, attorney's fees and delay damages.

**COUNT II**
**42 U.S.C. §1983**
**STATE CREATED DANGER**
**THOMAS V. DURAN, WARDEN OF THE CLINTON COUNTY PRISON,**
**DEPUTY WARDEN JACQUELINE K. MOTTER**
**DEPUTY WARDEN DAVID W. HARKEY**
**MICHELE SWEELEY**
**JOHN DOE III**

121.   Plaintiff includes averments 1 through 120 by reference as though set forth
herein at length.

122.    Defendants were responsible for providing Plaintiff with a safe prison
environment.

123.   Plaintiff's injuries were a foreseeable and direct consequence of Defendants'
failure to have and adequate policies, customs and/or standard operating
procedures that provided the following, but not limited to:

a)      Ensuring inmates such as Plaintiff were assigned to safe jobs and/or
were trained or experienced in said jobs and/or not placed at risk of
harm;

b)      Ensuring inmates such as Plaintiff receive safety training before
working in the Correctional Facility kitchen;

c)      Ensuring inmates such as Plaintiff are protected from unsafe working
conditions;

d)   Ensuring inmates such as Plaintiff be provided personal protective equipment, gear and/or clothing and/or personal protective equipment, gear and/or clothing at all times;

e)   Ensuring the Correctional Facility kitchen had burn first aid showers and/or first aid burn stations where serious burns could occur;

f)   Ensuring that Correctional Facility officers and/or staff were trained and/or instructed on emergency medical care for inmate burn victims such as Plaintiff;

g)   Ensuring that at all times the Correctional Facility was adequately stocked with medical supplies that would be needed to care for inmate burn victims such as Plaintiff;

h)   Ensuring that medical emergency policies were in effect in the event a severe inmate burn emergency occurred at Correctional Facility;

i)   Ensuring procedures were in effect for rapidly transporting inmate burn victim such as Plaintiff to medical facilities from Correctional Facility were in place;

j)   Ensuring procedures were in effect for transporting inmate burn victim such as Plaintiff back to medically necessary doctor's appointments;

k)      Ensuring Correctional Facility officers and/or personnel received specialized medical training to care for inmate burn victims such as Plaintiff; and

l)      Ensuring that at all times the Correctional Facility had a nurse and/or specially trained medical personnel available to care for inmate burn victims such as Plaintiff.

124.   Defendants' failure to have and follow adequate policies violated Plaintiff's civil rights, by increasing Plaintiff's risk of harm and directly caused the foreseeable injuries to Plaintiff.

125.   Defendants' actions increased the risk of danger to Plaintiff in that the Defendants failed to take precautions necessary to prevent Plaintiff from sustaining severe burns and permanent disfigurement. Defendant's actions were deliberately indifferent to Plaintiff's constitutional rights and were malicious, conscience shocking and done with willful disregard for the safety of the Plaintiff.

126.   Defendants acted in a conscience-shocking manner and with deliberate indifference, malice and with willful disregard for the safety of the Plaintiff when they failed to have adequate policies, practices, standard operating procedures and training.

127.   Defendants used their authority to increase the risk of creating an

opportunity for the Plaintiff to be injured, which would not have existed, but

for the acts of the Defendants in requiring Plaintiff to perform unsafe tasks

in the kitchen and remain in an unsafe environment exposing her burns to

infection and permanent disfigurement.

128.   Defendants used their authority to increase the risk of creating an

opportunity for the Plaintiff to be injured, which would not have existed, but

for the acts of the Defendants in unjustly delaying emergency transportation

for Plaintiff to a medical facilities from Correctional Facility and denying

transportation back to medically necessary doctor's appointments.

129.   Defendants acted within the course and scope of their employment, under

the color of law, and pursuant to the customs, policies, standard operating

procedures of the County of Clinton and/or the Clinton County Prison

Board.

130.   All of these actions violated the Plaintiffs rights under the Fourth and

Fourteenth Amendments to the United States Constitution and Article I§§ 8

and 9 Constitution of the Commonwealth of Pa. and the laws of the United

States and the Commonwealth of Pennsylvania and is in violation of

Plaintiff's rights pursuant to 42 U.S.C. §1983.

131.  The above described actions of the Defendants were so malicious, intentional and reckless and displayed such a reckless and deliberate indifference to the Plaintiff's rights and well being, that the imposition of punitive damages is warranted.

    **WHEREFORE**, pursuant to 42 U.S.C §§ 1983, Plaintiff demands compensatory and punitive damages against Defendants jointly and/or severally, in an amount in excess of One Hundred Thousand Dollars ($100,000), plus interest, costs, attorney's fees and delay damages.

**COUNT III**
**42 U.S.C. §1983**
**<u>STATE CREATED DANGER</u>**
**COUNTY OF CLINTON**
**CLINTON COUNTY COMMISSIONERS**
**THOMAS H. BOSSERT, HAROLD C. YOST, JR., RICHARD K. KYLE**

132.  Plaintiff includes averments 1 through 131 by reference as though set forth herein at length.

133.   Defendants were responsible for providing Plaintiff with a safe prison environment.

134.  Plaintiff's injuries were a foreseeable and direct consequence of Defendants' failure to have and adequate policies, customs and/or standard operating procedures that provided the following, but not limited to:

a)   Ensuring inmates such as Plaintiff were assigned to safe jobs and/or were trained or experienced in said jobs and/or not placed at risk of harm;

b)   Ensuring inmates such as Plaintiff receive safety training before working in the Correctional Facility kitchen;

c)   Ensuring inmates such as Plaintiff are protected from unsafe working conditions;

d)   Ensuring inmates such as Plaintiff be provided personal protective equipment, gear and/or clothing and/or use personal protective equipment, gear and/or clothing at all times;

e)   Ensuring the Correctional Facility kitchen had burn first aid showers and/or first aid burn stations where serious burns could occur;

f)   Ensuring that Correctional Facility officers and/or staff were trained and/or instructed on emergency medical care for inmate burn victims such as Plaintiff;

g)   Ensuring that at all times the Correctional Facility was adequately stocked with medical supplies that would be needed to care for inmate burn victims such as Plaintiff;

h)   Ensuring that medical emergency policies were in effect in the event a severe inmate burn emergency occurred at Correctional Facility;

i)     Ensuring procedures were in effect for rapidly transporting inmate burn victim such as Plaintiff to medical facilities from Correctional Facility were in place;

j)     Ensuring procedures were in effect for transporting inmate burn victim such as Plaintiff back to medically necessary doctor's appointments;

k)     Ensuring Correctional Facility officers and/or personnel received specialized medical training to care for inmate burn victims such as Plaintiff; and

l)     Ensuring that at all times the Correctional Facility had a nurse and/or specially trained medical personnel available to care for inmate burn victims such as Plaintiff.

135.   Defendants' failure to have and follow adequate policies violated Plaintiff's civil rights, by increasing Plaintiff's risk of harm and directly caused the foreseeable injuries to Plaintiff.

136.   Defendants' actions increased the risk of danger to Plaintiff in that the Defendants failed to take precautions necessary to prevent Plaintiff from sustaining severe burns and permanent disfigurement. Defendant's actions were deliberately indifferent to Plaintiff's constitutional rights and were

malicious, conscience shocking and done with willful disregard for the safety of the Plaintiff.

137.   Defendants acted in a conscience-shocking manner and with deliberate indifference, malice and with willful disregard for the safety of the Plaintiff when they failed to have adequate policies, practices, standard operating procedures and training.

138.   Defendants used their authority to increase the risk of creating an opportunity for the Plaintiff to be injured, which would not have existed, but for the acts of the Defendants in requiring Plaintiff to perform unsafe tasks in the kitchen and remain in an unsafe environment exposing her burns to infection and permanent disfigurement.

139.   Defendants used their authority to increase the risk of creating an opportunity for the Plaintiff to be injured, which would not have existed, but for the acts of the Defendants in unjustly delaying emergency transportation for Plaintiff to a medical facilities from Correctional Facility and denying transportation back to medically necessary doctor's appointments.

140.   Defendants acted within the course and scope of their employment, under the color of law, and pursuant to the customs, policies, standard operating procedures of the County of Clinton and/or the Clinton County Prison Board.

141.  All of these actions violated the Plaintiffs rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I§§ 8 and 9 Constitution of the Commonwealth of Pa. and the laws of the United States and the Commonweath of Pennsylvania and is in violation of Plaintiff's rights pursuant to 42 U.S.C. §1983.

142.  The above described actions of the Defendants were so malicious, intentional and reckless and displayed such a reckless and deliberate indifference to the Plaintiff's rights and well being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C §§ 1983, Plaintiff demands compensatory and punitive damages against Defendants jointly and/or severally, in an amount in excess of One Hundred Thousand Dollars ($100,000), plus interest, costs, attorney's fees and delay damages.

**COUNT IV**
**42 U.S.C. §1983**
**<u>STATE CREATED DANGER</u>**
**CHARLES ANKNEY,CLINTON COUNTY SHERIFF**
**JOHN DOE I, DEPUTY SHERIFF**
**JOHN DOE II, DEPUTY SHERIFF**

143.  Plaintiff includes averments 1 through 142 by reference as though set forth herein at length.

144.  Defendants were responsible for providing emergency medical transportation from the Correctional Facility to medical facilities.

Defendants were responsible for providing transportation from the

Correctional Facility to medically necessary appointment.  Defendants were

also responsible for the safety and care of inmates, such as Plaintiff.

145.   Plaintiff's injuries were a foreseeable and direct consequence of Defendants'

failure to have and adequate policies, customs and/or standard operating

procedures that provided the following, but not limited to:

a)    Ensuring procedures were in effect for rapidly transporting inmate

burn victim such as Plaintiff to medical facilities from Correctional

Facility;

b)    Ensuring inmates housed at the Correctional Facility, such as Plaintiff

were promptly transported to the hospital in the event of a medical

emergency;

c)    Ensuring procedures were in effect for transporting inmate burn

victim such as Plaintiff back to medically necessary doctor's

appointments

d)    Ensuring inmate burn victims housed at the Correctional Facility, such

as Plaintiff were taken to medically necessary appointments;

e)    Ensuring that procedures were in effect to communicate all hospital

discharge recommendations to the Correctional Facility and

specifically notify them of the need to return the injured inmate;

f)      Ensuring that the Correctional Facility was made aware of all doctor recommended follow-up appointments and that arrangements for transportation to said follow-up appointments were made in accordance with the doctor's orders;

g)      Ensuring that officers and/or staff were trained and/or instructed on relaying pertinent medical information from the hospital to the Correctional Facility such as the need for next day follow-up appointments; and

h)      Ensuring that officers were available to transport inmates to medically necessary appointments.

146.    Defendants' failure to have and follow adequate policies violated Plaintiff's civil rights, by increasing Plaintiff's risk of harm and directly caused the foreseeable injuries to Plaintiff.

147.    Defendants' actions increased the risk of danger to Plaintiff in that the Defendants failed to provide prompt transportation to the medical facility, transport Plaintiff to a doctor recommended follow-up visit, arrange transportation; communicate to the Correctional Facility of the doctor's recommendations and denied Plaintiff of doctor recommended and medically necessary medical treatment and as a result Plaintiff sustained permanent disfigurement.  Defendant's actions were deliberately indifferent

to Plaintiff's constitutional rights and were malicious, conscience shocking and done with willful disregard for the safety of the Plaintiff.

148.  Defendants acted in a conscience-shocking manner and with deliberate indifference, malice and with willful disregard for the safety of the Plaintiff when they failed to have adequate policies, practices, standard operating procedures and training.

149.  Defendants used their authority to increase the risk of creating an opportunity for the Plaintiff to be injured, which would not have existed, but for the acts of the Defendants in unjustly delaying and/or failing to provide timely transportation Plaintiff sustained permanent disfigurement.

150.  Defendants acted within the course and scope of their employment, under the color of law, and pursuant to the customs, policies, standard operating procedures of Defendant County of Clinton and/or the Clinton County Sheriff's Department.

151.  All of these actions violated the Plaintiffs rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I§§ 8 and 9 Constitution of the Commonwealth of Pa. and the laws of the United States and the Commonwealth of Pennsylvania and is in violation of Plaintiff's rights pursuant to 42 U.S.C. §1983.

152. The above described actions of the Defendants were so malicious, intentional and reckless and displayed such a reckless and deliberate indifference to the Plaintiff's rights and well being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C §§ 1983, Plaintiff demands compensatory and punitive damages against Defendants jointly and/or severally, in an amount in excess of One Hundred Thousand Dollars ($100,000), plus interest, costs, attorney's fees and delay damages.

**COUNT V**
**42 U.S.C. §1983**
**POLICY, CUSTOM, AND/OR PRACTICE OF FAILING TO PROTECT**
**CLINTON COUNTY PRISON BOARD,**
**THOMAS BOSSERT, CHAIRMAN OF THE CLINTON COUNTY PRISON**
**BOARD**

153. Plaintiff includes averments 1 through 152 by reference as though set fourth herein at length.

154. Plaintiff avers that Defendants have adopted and maintained for many years recognized and accepted policies, customs, practices and standard operating procedures within the County of Clinton and the Clinton County Correctional Facility, including but not limited to the following, which knowingly places inmates such as Plaintiff in dangerous positions and/or increases the risk of danger to inmates such as Plaintiff. Said policies,

customs, practices and standard operating procedures ultimately resulted in Plaintiff's being burned and disfigured:

a) Failing to have an adequate policy, training and supervision to ensure that inmates be assigned to safe jobs and/or jobs that they were trained or experienced and/or not placed at risk of harm;

b) Failing to have an adequate policy, training and supervision to ensure that inmates receive safety training before working in the Correctional Facility kitchen;

c) Failing to have an adequate policy, training and supervision to ensure that inmates are protected from unsafe working conditions

d) Failing to have an adequate policy, training and supervision to ensure that inmates be provided personal protective equipment and/or use personal protective equipment at all times;

e) Failing to have an adequate policy, training and supervision to ensure that burn first aid showers and/or first aid burn stations be installed in the Correctional Facility kitchen where serious burns could occur;

f) Failing to have an adequate policy, training and supervision to ensure that officers and/or Correctional Facility receive instruction on emergency medical care for burn victims;

g)      Failing to have an adequate policy, training and supervision to ensure

        that at all times the Correctional Facility be adequately stocked with

        medical supplies that would be needed to care for burn victims;

h)      Failing to have an adequate policy, training and supervision to ensure

        that procedures were in place in the event of a medical emergency

        occur at Correctional Facility;

i)      Failing to have an adequate policy, training and supervision to ensure

        that procedures for rapidly transporting inmates to medical facilities

        from Correctional Facility were in place;

j)      Failing to have an adequate policy, training and supervision to ensure

        that procedures for transporting burn victims back to medically

        necessary doctor's appointments;

k)      Failing to have an adequate policy, training and supervision to ensure

        that procedures and/or establish specialized medical training for

        Correctional Facility personnel to care for burn victims; and

l)      Failing to an adequate policy, training and supervision to ensure

        inmates receive adequate, proper and timely medical treatment and

        care.

155.   As a result, Defendants and their employees were inadequately trained resulting in deliberate indifference to Plaintiff by placing her in harms way and failing to protect her.

156.   The Defendants have been deliberately indifferent to individuals such as the Plaintiff for the reasons set forth herein.  Said deliberate indifference violates the Plaintiff's rights under the Eighth Amendment of the Constitution of the United States, Article I§§ 8 and 9 of the Constitution of the Commonwealth of Pennsylvania, and the laws of the Commonwealth of PA and was in violation of 42 U.S.C. §1983.

**WHEREFORE,** pursuant to 42 U.S.C. 1983 and 1988, Plaintiff demands compensatory damages against the Defendants in excess of One Hundred Thousand Dollars, plus interest, costs, attorney's fees and delay damages.

**COUNT VI**
**42 U.S.C. §1983**
**POLICY, CUSTOM, AND/OR PRACTICE OF FAILING TO PROTECT**
**THOMAS V. DURAN, WARDEN OF THE CLINTON COUNTY PRISON,**
**DEPUTY WARDEN JACQUELINE K. MOTTER**
**DEPUTY WARDEN DAVID W. HARKEY**
**MICHELE SWEELEY**
**JOHN DOE III**

157.   Plaintiff includes averments 1 through 156 by reference as though set fourth herein at length.

158.   Plaintiff avers that Defendants have adopted and maintained for many years recognized and accepted policies, customs, practices and standard operating

procedures within the Clinton County Correctional Facility, including but not limited to the following, which knowingly places inmates such as Plaintiff in dangerous positions and/or increases the risk of danger to inmates such as Plaintiff.  Said policies, customs, practices and standard operating procedures ultimately resulted in Plaintiff's being burned and disfigured:

a)   Failing to have an adequate policy, training and supervision to ensure that inmates be assigned to safe jobs and/or jobs that they were trained or experienced and/or not placed at risk of harm;

b)   Failing to have an adequate policy, training and supervision to ensure that inmates receive safety training before working in the Correctional Facility kitchen;

c)   Failing to have an adequate policy, training and supervision to ensure that inmates are protected from unsafe working conditions

d)   Failing to have an adequate policy, training and supervision to ensure that inmates be provided personal protective equipment and/or use personal protective equipment at all times;

e)   Failing to have an adequate policy, training and supervision to ensure that burn first aid showers and/or first aid burn stations be installed in the Correctional Facility kitchen where serious burns could occur;

f)   Failing to have an adequate policy, training and supervision to ensure that officers and/or Correctional Facility receive instruction on emergency medical care for burn victims;

g)   Failing to have an adequate policy, training and supervision to ensure that at all times the Correctional Facility be adequately stocked with medical supplies that would be needed to care for burn victims;

h)   Failing to have an adequate policy, training and supervision to ensure that procedures were in place in the event of a medical emergency occur at Correctional Facility;

i)   Failing to have an adequate policy, training and supervision to ensure that procedures for rapidly transporting inmates to medical facilities from Correctional Facility were in place;

j)   Failing to have an adequate policy, training and supervision to ensure that procedures for transporting burn victims back to medically necessary doctor's appointments;

k)   Failing to have an adequate policy, training and supervision to ensure that procedures and/or establish specialized medical training for Correctional Facility personnel to care for burn victims; and

l)      Failing to an adequate policy, training and supervision to ensure inmates receive adequate, proper and timely medical treatment and care.

159.  As a result, Defendants and their employees were inadequately trained resulting in deliberate indifference to Plaintiff by placing her in harms way and failing to protect her.

160.  The Defendants have been deliberately indifferent to individuals such as the Plaintiff for the reasons set forth herein.  Said deliberate indifference violates the Plaintiff's rights under the Eighth Amendment of the Constitution of the United States, Article I§§ 8 and 9 of the Constitution of the Commonwealth of Pennsylvania, and the laws of the Commonwealth of PA and was in violation of 42 U.S.C. §1983.

**WHEREFORE,** pursuant to 42 U.S.C. 1983 and 1988, Plaintiff demands compensatory damages against the Defendants in excess of One Hundred Thousand Dollars, plus interest, costs, attorney's fees and delay damages.

**COUNT VII**
**42 U.S.C. §1983**
**POLICY, CUSTOM, AND/OR PRACTICE OF FAILING TO PROTECT**
**COUNTY OF CLINTON**
**CLINTON COUNTY COMMISSIONERS**
**THOMAS H. BOSSERT, HAROLD C. YOST, JR., RICHARD K. KYLE**

161.    Plaintiff includes averments 1 through 160 by reference as though set fourth

herein at length.

162.    Plaintiff avers that Defendants have adopted and maintained for many years

recognized and accepted policies, customs, practices and standard operating

procedures within the County of Clinton and the Clinton County

Correctional Facility, including but not limited to the following, which

knowingly places inmates such as Plaintiff in dangerous positions and/or

increases the risk of danger to inmates such as Plaintiff.  Said policies,

customs, practices and standard operating procedures ultimately resulted in

Plaintiff's being burned and disfigured:

a)      Failing to have an adequate policy, training and supervision to ensure

that inmates be assigned to safe jobs and/or jobs that they were trained

or experienced and/or not placed at risk of harm;

b)      Failing to have an adequate policy, training and supervision to ensure

that inmates receive safety training before working in the Correctional

Facility kitchen;

c)      Failing to have an adequate policy, training and supervision to ensure that inmates are protected from unsafe working conditions

d)      Failing to have an adequate policy, training and supervision to ensure that inmates be provided personal protective equipment and/or use personal protective equipment at all times;

e)      Failing to have an adequate policy, training and supervision to ensure that burn first aid showers and/or first aid burn stations be installed in the Correctional Facility kitchen where serious burns could occur;

f)      Failing to have an adequate policy, training and supervision to ensure that officers and/or Correctional Facility receive instruction on emergency medical care for burn victims;

g)      Failing to have an adequate policy, training and supervision to ensure that at all times the Correctional Facility be adequately stocked with medical supplies that would be needed to care for burn victims;

h)      Failing to have an adequate policy, training and supervision to ensure that procedures were in place in the event of a medical emergency occur at Correctional Facility;

i)      Failing to have an adequate policy, training and supervision to ensure that procedures for rapidly transporting inmates to medical facilities from Correctional Facility;

j)     Failing to have an adequate policy, training and supervision to ensure that procedures for transporting burn victims back to medically necessary doctor's appointments;

k)     Failing to have an adequate policy, training and supervision to ensure that procedures and/or establish specialized medical training for Correctional Facility personnel to care for burn victims; and

l)     Failing to an adequate policy, training and supervision to ensure inmates receive adequate, proper and timely medical treatment and care.

163.   As a result, Defendants and their employees were inadequately trained resulting in deliberate indifference to Plaintiff by placing her in harms way and failing to protect her.

164.   The Defendants have been deliberately indifferent to individuals such as the Plaintiff for the reasons set forth herein.  Said deliberate indifference violates the Plaintiff's rights under the Eighth Amendment of the Constitution of the United States, Article I§§ 8 and 9 of the Constitution of the Commonwealth of Pennsylvania, and the laws of the Commonwealth of PA and was in violation of 42 U.S.C. §1983.

**WHEREFORE,** pursuant to 42 U.S.C. 1983 and 1988, Plaintiff demands compensatory damages against the Defendants in excess of One Hundred Thousand Dollars, plus interest, costs, attorney's fees and delay damages.

**COUNT VIII**
**42 U.S.C. §1983**
**POLICY, CUSTOM, AND/OR PRACTICE OF FAILING TO PROTECT**
**CHARLES ANKNEY,CLINTON COUNTY SHERIFF**
**JOHN DOE I, DEPUTY SHERIFF**
**JOHN DOE II, DEPUTY SHERIFF**

165.   Plaintiff includes averments 1 through 164 by reference as though set fourth herein at length.

166.   Plaintiff avers that Defendants have adopted and maintained for many years recognized and accepted policies, customs, practices and standard operating procedures within the County of Clinton, the Clinton County Correctional Facility and the Clinton County Sheriff's Department including but not limited to the following, which knowingly places inmates such as Plaintiff in dangerous positions and/or increases the risk of danger to inmates such as Plaintiff.  Said policies, customs, practices and standard operating procedures ultimately resulted in Plaintiff's being permanently disfigured:

a)   Failing to have an adequate policy, training and supervision to ensure that procedures for rapidly transporting inmates to medical facilities from Correctional Facility were in place;

b)      Failing to have an adequate policy, training and supervision to ensure procedures were in effect for rapidly transporting inmate burn victim such as Plaintiff to medical facilities from Correctional Facility;

c)      Failing to have an adequate policy, training and supervision to ensure procedures were in effect to promptly transport inmate burn victims housed at the Correctional Facility, such as Plaintiff to the hospital in the event of a medical emergency;

d)      Failing to have an adequate policy, training and supervision to ensure procedures were in effect for transporting inmate burn victim such as Plaintiff back to medically necessary doctor's appointments;

e)      Failing to have an adequate policy, training and supervision to ensure inmate burn victims housed at the Correctional Facility, such as Plaintiff were taken to medically necessary appointments;

f)      Failing to have an adequate policy, training and supervision to ensure that procedures were in effect to communicate all hospital discharge recommendations to the Correctional Facility and specifically notify them of the need to return the injured inmate;

g)      Failing to have an adequate policy, training and supervision to ensure that the Correctional Facility was made aware of all doctor recommended follow-up appointments and that arrangements for

transportation to said follow-up appointments were made in
accordance with the doctor's orders;

h)      Failing to have an adequate policy, training and supervision to ensure
that officers and/or staff were trained and/or instructed on relaying
pertinent medical information from the hospital to the Correctional
Facility such as the need for next day follow-up appointments;

i)      Failing to have an adequate policy, training and supervision to ensure
that officers were available to transport inmates to medically
necessary appointments; and

j)      Failing to have an adequate policy, training and supervision to ensure
inmates receive adequate, proper and timely medical treatment and
care.

167.    As a result, Defendants and their employees were inadequately trained
resulting in deliberate indifference to Plaintiff by placing her in harms way
and failing to protect her.

168.    The Defendants have been deliberately indifferent to individuals such as the
Plaintiff for the reasons set forth herein.  Said deliberate indifference
violates the Plaintiff's rights under the Eighth Amendment of the
Constitution of the United States, Article I§§ 8 and 9 of the Constitution of

the Commonwealth of Pennsylvania, and the laws of the Commonwealth of

PA and was in violation of 42 U.S.C. §1983.

WHEREFORE, pursuant to 42 U.S.C. 1983 and 1988, Plaintiff

demands compensatory damages against the Defendants in excess of One

Hundred Thousand Dollars, plus interest, costs, attorney's fees and delay

damages.

Respectfully Submitted,
Lepley, Engelman & Yaw, LLC


/s/Douglas N. Engelman, Esq.
Douglas N. Engelman, Esq.
ID#34839
140 East Third Street
Williamsport, PA  17701
570-323-3768 (telephone)
570-323-6191 (facsimile)
Attorney for Plaintiff
Douge@lepleylaw.com

## **<u>JURY TRIAL DEMANDED</u>**

A jury trial is hereby demanded.